UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ELIZABETH Y. MOORE,

Plaintiff,

vs. Case No. 3:06-cv-942-J-MCR

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.
_______________________________________/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on January 30, 2004. (Tr. 68-70). Plaintiff also filed an application for Supplemental Security Income ("SSI") on November 30, 2004. Both of these applications allege disability beginning July 18, 2003, and both applications were denied initially and upon reconsideration. (Tr. 22-25). Plaintiff then filed a timely written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 51). This

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15).

request was granted, and Plaintiff appeared and testified at a hearing held on June 8, 2006. (Tr. 911-31). On June 30, 2006, the ALJ issued a decision finding Plaintiff "not disabled." (Tr. 13-17). On September 12, 2006, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's June 30, 2006 decision the final decision of the Commissioner. (Tr. 6-8). Plaintiff timely filed her Complaint in the U.S. District Court on October 26, 2006. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled beginning July 18, 2003 due to various physical ailments, including pancreatitis, diabetes mellitus, status post right shoulder injury and neuropathy in the feet. (Doc. 18).

### B. Summary of the Evidence Before the ALJ

Plaintiff was 55 years old at the alleged onset date, and 57 years old at the time of the ALJ's decision. (Tr. 19). She completed the eleventh grade, received some additional vocational training, and worked as a Certified Nurse's Aide ("CNA") for 28 years. (Tr. 19).

#### 1. Medical Evidence

Plaintiff suffered injuries during a car accident in January of 2003. (Tr. 156-61). As a result of these injuries, Plaintiff sought treatment from Dr. Bao Pham beginning on January 8, 2003. (Tr. 156-61). During her initial visit, Plaintiff complained of "neck pain radiating to [her] shoulder and head." (Tr. 156). At this point, Plaintiff had already received x-rays and pain medicine (Flexeril and Lortab) from her initial emergency room

examination, and Dr. Bao Pham initiated a treatment plan including hot/cold therapy and stretching exercises. (Tr. 150, 156). Plaintiff continued to see Dr. Bao Pham for follow-up visits through January 13, 2003, consistently indicating intense pain and tenderness in her neck, back and shoulders. (Tr. 145-151).

Plaintiff then sought treatment from Dr. Hickey – an orthopedic rehabilitation specialist – beginning on January 15, 2003. (Tr. 162). Plaintiff reported a past medical history of diabetes and ulcer/stomach problems, and current problems with her neck, shoulder, back, and right arm. (Tr. 162-63). This treating relationship extended through July 16, 2003, at which point Dr. Hickey issued a Final Examination Report. (Tr. 167). During this period, Plaintiff was treated once per week for a course of physical modalities including: ice/moist hot packs, electrical stimulation, and aquatic therapy; therapeutic procedures (range of motion and stretching exercises); and physiotherapy of the right shoulder. (Tr. 175). Plaintiff was also prescribed Lortab and instructed to seek treatment from a licensed massage therapist. (Tr. 175).

After Plaintiff completed her therapy, Dr. Hickey's Final Examination Report indicated:

> Ms. Moore has made a limited recovery from her injuries. Considering the severity of her condition and the extent of the injuries involved, the patient has made satisfactory progress . . . . Ms. Moore is still in pain. It is the opinion of this office that Ms. Moore has reached maximum medical improvement from our treatment. Further treatment in this case would only be palliative in nature. Ms. Moore has been advised to avoid stressful activities which could tend to exacerbate her condition.

(Tr. 168). Dr. Hickey also noted x-rays of the right shoulder suggested a "sprain/strain" with very slight improvement. (Tr. 168). Further, the shoulder displayed no significant joint effusion, and no evidence of appreciable fluid in the subacromial-subdeltoid bursa.

(Tr. 213). There was also no evidence of a rotator cuff tear or damage to the major tendons or joints. (Tr. 213).

On November 11, 2003, Plaintiff was admitted to St. Vincent's Medical Center for an "emergency room evaluation of epigastric pain." (Tr. 324). The Preliminary Report indicated a mild exacerbation of pancreatitis requiring symptomatic treatment. (Tr. 325). This exacerbation was treated with intravenous fluids, and Plaintiff was discharged in less than 24 hours "look[ing] very comfortable and asymptomatic." (Tr. 325).

Dr. Choisser examined Plaintiff for a disability evaluation on April 6, 2004. (Tr. 347-51). Dr. Choisser noted Plaintiff's "upper extremity grip strength and fine dexterity are 4/5 and equal bilaterally." (Tr. 348). Further, Plaintiff's abdomen was "non-tender with good bowel sounds, but there [was] tenderness in the upper abdomen consistent with the pancreatitis." (Tr. 348). Dr. Choisser also indicated Plaintiff's range of motion with her upper right extremity was somewhat limited but had no overt deformity, pain, swelling, heat or redness in the joints. (Tr. 348).

On July 8, 2004, Dr. Reuben Brigety performed a Physical Residual Functional Capacity Assessment, finding Plaintiff retained the capacity to lift up to 50 pounds. (Tr. 408). Dr. Brigety opined Plaintiff's ability to push and/or pull was limited only by her ability to lift and carry, and Plaintiff was capable of sitting or standing for about 6 hours in an 8-hour workday. (Tr. 408). According to the Assessment, Plaintiff was limited to occasional overhead reaching because of her right shoulder. (Tr. 410).

Plaintiff again presented to Dr. Choisser on April 26, 2005 for another disability evaluation. (Tr. 523). Dr. Choisser noted Plaintiff's grip and fine dexterity were 5/5 and equal bilaterally. (Tr. 524). Plaintiff's abdomen was also non-tender with good bowel

sounds, with no noted organomegaly. (Tr. 524). Dr. Choisser stated Plaintiff's abduction of the right shoulder is possible to 60 degrees, and posterior elevation is possible to 10 degrees before causing pain. (Tr. 524). The evaluation indicated a clinical impression of intractable pancreatitis with intermittent flare-ups and right shoulder pain among other secondary diagnoses. (Tr. 524).

Plaintiff's symptoms were also evaluated in two subsequent Physical Residual Functional Capacity Assessments. (Tr. 542-48, 558-65). Both of these Assessments found Plaintiff capable of occasionally lifting up to 50 pounds. (Tr. 543, 559). Further, both reports indicated Plaintiff's ability to sit and/or stand for 6 hours of an 8-hour workday, only limiting Plaintiff's "manipulative" functions to occasional overhead reaching. (Tr. 545).

**2. Plaintiff's Testimony**

At a hearing on June 8, 2006, the ALJ questioned Plaintiff on a number of issues including her work experience and health. (Tr. 911). Plaintiff answered some preliminary questions regarding her education and indicated she had not been seeking work since July of 2003, citing pain, pancreatitis, diabetes, neuropathy, and a right shoulder injury as the medical reasons for her inability to work. (Tr. 913-14). Plaintiff further stated her medication regimen has little or no effect on her pain levels, and her only reason for continuing with this regimen is to comply with her physician's recommendations. (Tr. 916).

Plaintiff claimed to have 28 years of previous work experience as a Certified Nurse Aide ("CNA"), which sometimes required her to lift as much as 200 pounds. (Tr. 916-17). However, Plaintiff states she is now incapable of meeting the demands of her

past work due to her shoulder injury and pancreatitis. (Tr. 917). According to Plaintiff, her pancreatitis has induced recurrent diarrhea, causing discomfort and forcing her to call in "practically every day." (Tr. 917). Since Plaintiff stopped working, she reads or watches television for approximately two hours a day, and performs household activities very infrequently. (Tr. 918-19). She does, however, volunteer extensively with her church. These volunteer activities include reading, singing, and teaching basic literacy to children (ages 7 to 12) attending her church. (Tr. 920). Plaintiff also mentioned visiting with family in North Carolina and Virginia, and traveling with her singing group "[p]ractically every time they go." (Tr. 923). She indicated these trips take place two to three times a year, the most recent being to Kentucky. (Tr. 923-24).

During the attorney's examination, Plaintiff testified to taking pain medicine for three years in an effort to treat her pancreatitis. (Tr. 924). She further stated her pancreatitis was a congenital defect which required her to follow up with her physician every three months. (Tr. 925). Plaintiff claimed this pancreatitis causes constant diarrhea and pain, meaning she must use the restroom between five and seven times a day. (Tr. 925). Plaintiff stated her diabetes medication was able to control her blood sugar, but her treatment with respect to her right shoulder has been ineffective. (Tr. 926). She testified to an overall decrease in right arm function and an inability to lift her right arm over her head. (Tr. 926).

**C. <u>Summary of the ALJ's Decision</u>**

A claimant is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 416.905 (2007).[2] The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(4)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, she is disabled. 20 C.F.R. § 416.920(4)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 416.920(4)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 416.920(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 13, 2007, and Plaintiff had not engaged in any substantial gainful activity at any point relevant to the decision. (Tr. 15). The ALJ also found Plaintiff had several medically determinable impairments, none of which mandated a finding of "disabled" under the Regulations. (Tr. 15-16). Specifically, the ALJ noted Plaintiff's medically determinable depressive disorder should not interfere

---

[2] All subsequent references to the Code of Federal Regulations will be to the 2007 edition.

significantly with her ability to perform work activity, citing Dr. Sanchez's opinion that "other than having a mild depression which responded to 100mg of Zoloft per day, this lady shows no significant psychiatric symptoms to justify a current active diagnosis of depression. . . . [and] should not be limited in her capacity to function in a job situation or to manage her own financial affairs." (Tr. 15-16).

The ALJ also found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the Regulations. (Tr. 16). Namely, Plaintiff's "pancreatitis and diabetes mellitus do not meet or medically equal any section under 5.00 Digestive System or 9.00 Endocrine System." (Tr. 16). The ALJ went on to explain that none of Plaintiff's medically determinable impairments resulted in a loss of function with an inability to ambulate effectively or an inability to perform fine and gross movements effectively as defined by the Regulations. (Tr. 16).

Further, the ALJ found no evidence of record which would indicate that these impairments could reasonably produce disabling pain or other symptoms. (Tr. 16). In support of this finding, the ALJ points to Plaintiff's ability to "perform routine ambulatory activities such as taking public transportation, banking, and shopping," in addition to "preparing a simple meal, sorting and handling papers or files, and bathing, dressing, and feeding herself." (Tr. 16). While recognizing Plaintiff may experience some pain or other symptoms, the ALJ found neither the severity nor frequency of these symptoms "would seriously interfere with her ability to independently initiate, sustain, or complete activities." (Tr. 16).

With respect to Plaintiff's residual functional capacity, the ALJ found Plaintiff

capable of medium work on a sustained basis. (Tr. 16). This includes the ability to lift and/or carry 25 pounds frequently and 50 pounds occasionally; to stand and/or walk and sit without limitation; and to occasionally bend, crouch, kneel, stoop, squat, and crawl. (Tr. 16). However, the ALJ found Plaintiff should avoid the following: "ladders or unprotected heights, operation of heavy moving machinery, operation of foot controls, overhead reaching with the right arm, and pushing/pulling of arm controls with the right arm." (Tr. 16-17).

The ALJ found Plaintiff suffered "whiplash and right shoulder sprain/strain injuries" in a motor vehicle accident in January of 2003, though radiological studies showed no injury to the cervical vertebrae or right shoulder. (Tr. 18). Dr. Hickey, Plaintiff's treating physician, also indicated Plaintiff's symptoms abated with physical therapy and medication, but palliative care may be necessary in the future to deal with intermittent flare-ups. (Tr. 18).

The ALJ also found Plaintiff's pancreatitis and gastritis to be the cause of her intermittent abdominal pain. (Tr. 18). On the whole, these intermittent bouts of abdominal pain responded well to medication and intravenous hydration, and no surgery was recommended for this condition. (Tr. 18). The ALJ also indicated a cardiac work-up in April of 2005 was most likely attributable to gastroesophageal reflux disease associated with Plaintiff's pancreatitis and gastritis. (Tr. 18).

The ALJ found the opinions of the State Agency medical consultants were partially credible and supportive of his ultimate findings with respect to Plaintiff's residual functional capacity. (Tr. 18). While the State Agency consultants correctly indicated Plaintiff was capable of performing medium work, the ALJ found it necessary to further

limit Plaintiff's functional capacity in accordance with the medical evaluations of Dr. Hickey and Dr. Choisser. (Tr. 18). In light of these opinions, the ALJ found Plaintiff's extensive treating records "do not support debilitating limitations as alleged by the claimant." (Tr. 18). Specifically, Plaintiff's possible right rotator cuff tear was unconfirmed, none of Plaintiff's treating physicians advised her to refrain from work activity, and all of her impairments have been receptive to medication. (Tr. 19). The ALJ also found Plaintiff's daily activities suggest an ability to work on a sustained basis, and her intermittent difficulties related to pancreatitis and gastritis were not of the severity or frequency that they would preclude substantial gainful activity. (Tr. 19).

The ALJ found, in accordance with the testimony of the VE, that although Plaintiff did not retain the residual functional capacity to perform her past work as a CNA, the "patient care skills" she acquired would transfer to the light job of a daycare worker. (Tr. 19). The ALJ also noted "transferability of job skills is otherwise not material to the determination of disability due to the claimant's age and residual functional capacity for medium work." (Tr. 19). As such, the ALJ found there are jobs that exist in significant numbers in the national economy that claimant is capable of performing. (Tr. 19). In making this determination, the ALJ also noted Plaintiff's additional limitations which precluded her from doing substantially all of the activities within the exertional level described as "medium work," and thus the ultimate determination as to whether Plaintiff could adjust to alternative work was best determined by the testimony of a VE. (Tr. 20). The VE testified that Plaintiff was capable of performing several jobs in the national economy, all of which exist in significant numbers. (Tr. 20). The ALJ found this testimony to be credible and compatible with the Dictionary of Occupational Titles. (Tr.

20). Therefore, the ALJ found Plaintiff "not disabled" as defined by the Social Security Act. (Tr. 20).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

**B. Arguments**

Plaintiff asserts the ALJ (1) misrepresented her residual functional capacity in the hypothetical posed to the VE; and (2) failed to properly evaluate the transferability of work-related skills by neglecting to utilize the Medical-Vocational Guidelines (“Grids”). The Commissioner contends the ALJ’s decision is supported by substantial evidence and Plaintiff retains the residual functional capacity to perform work activity in accordance with the ALJ’s findings.

**Whether the hypothetical posed to the VE adequately reflected Plaintiff’s residual functional capacity.**

As mentioned above, the claimant bears the burden of proving an inability to engage in substantial gainful activity in order to receive disability benefits. See 20 C.F.R. §§ 404.1512, 416.912; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). However, once a claimant has proven an inability to perform past relevant work at step four of the sequential evaluation process, the burden shifts to the Commissioner to show that alternative work exists in the national economy which the claimant is able to perform. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). In determining whether the claimant is capable of adjusting to alternative employment, the ALJ must consider the claimant’s residual functional capacity and several vocational factors – including age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ must also discern what skills, if any, the claimant acquired through previous work experience. 20 C.F.R. §§ 404.1568, 416.968. If the Commissioner can prove the claimant retains the residual functional capacity to perform other work, then the claimant

is not disabled. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

In attempting to meet his burden, the Commissioner may rely upon the Grids to establish other work exists in the national economy that the claimant is able to perform. Patterson v. Bowen, 799 F.2d 1455, 1458 (11th Cir. 1986). However, "[e]xclusive reliance on the grids is not appropriate either when [a] claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). In fact, in such circumstances, "the preferred method of demonstrating job availability is through expert vocational testimony." Id. at 1003.

In the instant case, the ALJ found Plaintiff had the capacity to perform the vast majority of activities associated with "medium work," but had some physical limitations which precluded her from performing the full range of activities at that exertional level. (Tr. 20). As such, the ALJ recognized exclusive reliance on the Grids would be inappropriate, and enlisted the help of a VE to provide a more personalized and comprehensive assessment of the extent to which Plaintiff's limitations might affect her ability to perform alternative work. See Jones, 190 F.3d at 1229 ("The ALJ determined that [claimant] was not capable of performing a full range of sedentary work, so he appropriately called a VE to testify whether [claimant], given her limitations, was capable of performing other jobs in the national economy."); Smith v. Bowen, 792 F.2d 1547, 1554 (11th Cir. 1986) (showing the Grids may be used only when each variable on the appropriate Grid accurately describes the claimant's situation).

When using a VE, the ALJ will "pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously

determined that the claimant has will be able to secure employment in the national economy." Phillips, 357 F.3d at 1240. In order for the VE's testimony to constitute substantial evidence, the ALJ's hypothetical must comprise all of the claimant's impairments. Jones, 190 F.3d at 1229.

Plaintiff asserts the hypothetical posed by the ALJ was faulty because it failed to accurately reflect the limitations imposed by the injury to her right shoulder. (Doc. 18). Specifically, Plaintiff claims: "[b]y limiting the plaintiff to five pounds for the right hand the Court has limited the plaintiff to sedentary work, not light work." (Doc. 18, p.5). This assertion is meritless because the restriction in the ALJ's hypothetical referred to the **independent** use of the right hand. This restriction does not (and was not intended to) suggest Plaintiff is incapable of lifting more than five pounds; rather, it prohibits lifting more than five pounds using **only** her right hand. The VE correctly understood the ALJ's restriction as referring to the independent use of the right hand, and opined that this restriction would not preclude Plaintiff from working as a daycare worker. (Tr. 929).

There is ample evidence to support the ALJ's finding with respect to Plaintiff's ability to lift and carry, including four different residual functional capacity evaluations. (Tr. 407-14, 476-83, 542-48(a), 558-65). These evaluations were all completed subsequent to Plaintiff's right shoulder trauma, and they unanimously indicate Plaintiff's ability to lift up to 50 pounds. (Tr. 408, 477, 543, 559). The ALJ's ultimate findings were in keeping with this evidence of record, and serve to rebut Plaintiff's erroneous contention that the limitations imposed by her shoulder would limit her to sedentary work.

Plaintiff also appears to argue that the VE's testimony she could perform the job of daycare worker is inconsistent with the DOT description of daycare worker because the DOT description requires frequent reaching. Plaintiff takes the position that the RFC established by the ALJ limited Plaintiff's ability to engage in frequent overhead reaching with her right arm and as a result, Plaintiff cannot perform the job of daycare worker as it is described in the DOT. The Court finds no inconsistency between Plaintiff's RFC and her ability to perform the job of daycare worker. As the Commissioner points out, the ALJ only limited Plaintiff's ability to engage in frequent **overhead** reaching and the DOT description does not specify that the reaching required is overhead reaching.

Finally, Plaintiff also claims the hypothetical framed by the ALJ is flawed because it fails to clarify what skills were transferable from Plaintiff's previous work experience. Specifically, Plaintiff argues that the VE failed to explain how Plaintiff's patient care skills acquired from working as a certified nurse aide for the elderly would transfer over to Plaintiff becoming a daycare worker. This argument is rendered moot by virtue of the fact that one of the ALJ's hypotheticals required the VE to demonstrate available employment opportunities where a person similarly situated to Plaintiff had no previously acquired job skills. (Tr. 929-30). Assuming Plaintiff had no transferable skills or semi-skills, the VE indicated Plaintiff would still be capable of working as a "hand packager" or "dishwasher," and both of these positions exist in significant numbers in the national economy and the State of Florida. (Tr. 930). Therefore, even if Plaintiff's "patient care" skills were non-transferable under the Regulations, see 20 C.F.R. § 404.1568(d)(4), Plaintiff would still be able to find gainful employment. The VE's testimony was consistent with the Grids, and the ALJ reasonably relied on the VE's

credible testimony in finding Plaintiff "not disabled" as defined by the Social Security Act.

**Whether the ALJ erred by failing to utilize the Grids.**

Plaintiff argues, as a corollary to the first argument, that the ALJ's failure to use the Grids in determining whether Plaintiff retained the capacity to adjust to alternative work constitutes reversible error. This argument is meritless because it (1) suggests the ALJ must rely on the Grids to discern whether the claimant retains the residual functional capacity and vocational skills necessary to adjust to other work; and (2) presupposes Plaintiff's physical limitations are restrictive to the extent that she is only capable of sedentary work.

As discussed above, where a claimant is unable to perform a full range of work at a given exertional level, the ALJ must not rely exclusively on the Grids; rather, the ALJ should consider the testimony of the VE to establish job availability. See Walker, 826 F.2d at 1002-03. In the instant case, the ALJ followed the requirements set forth in Walker. Because Plaintiff's various exertional and non-exertional limitations rendered her incapable of performing all (or substantially all) of the requirements of medium work, the ALJ utilized the VE's testimony to establish whether a significant number of jobs existed in the national economy which Plaintiff could perform. Given the VE's testimony that several types of jobs existed in significant numbers in the national and regional economies that a person with Moore's RFC could perform, substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled.

Finally, assuming *arguendo*, if the ALJ had utilized the Grids, the correct application of Plaintiff's "maximum sustained work capability" would necessitate a

finding of “not disabled.” 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 203.13. Again, Plaintiff’s contention that the Grids would have mandated a finding of “disabled” is based on the previously discussed misconception that the ALJ’s findings limited Plaintiff to lifting five pounds. This is clearly not the case, and the ALJ was correct in utilizing the testimony of a VE to determine whether alternative work could be performed.

The record reveals that the ALJ reviewed all relevant medical evidence in detail, and the hypothetical posed to the VE comprised all limitations which could reasonably affect Plaintiff’s ability to perform work activity. The ALJ’s findings are supported by substantial evidence and the hypothetical posed to the VE was complete and probative. Therefore, the Court finds that a remand is unnecessary in this case.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner’s decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of November, 2007.

Monte C. Richardson

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record